**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X    Case No.: 23-cv-9911
DANIEL GRAHAM and DEVON HAILSTOCK,

                                    Plaintiffs,

                    -against-

CHA CHA MATCHA, INC., JAY GUJJAR,
*Individually and in His Official Capacities, and* JOSIP
DRAZENOVICH, *Individually and in His Official
Capacities,*

                                    Defendants.
-------------------------------------------------------------X

                    **AMENDED
                    COMPLAINT**


                    **PLAINTIFF DEMANDS
                    A TRIAL BY JURY**

       DANIEL GRAHAM ("Mr. Graham") and DEVON HAILSTOCK ("Mr. Hailstock") (together "Plaintiffs"), by and through their attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, against CHA CHA MATCHA, INC., and JOSIP DRAZENOVICH ("Defendants"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.    Plaintiffs complain pursuant to **Section 1981 of the Civil Rights Act of 1866**, 42 U.S.C. § 1981 ("Section 1981"), the **New York State Human Rights Law**, NYS Executive Law § 296, *et seq.* ("NYSHRL"), and the **New York City Human Rights Law,** New York City Administrative Code § 8-107(1), *et seq.* ("NYCHRL")*,* and seek damages to redress the injuries Plaintiffs have suffered as a result of being **discriminated, against** and subjected to an ongoing and continuous **hostile work environment** by Defendants solely due to their **race and color**.

2.    DEFENDANT CHA CHA MATCHA is no stranger to public claims of an ongoing racially hostile and discriminatory work environment for its minority employees. For examples, *see* Eater article (https://ny.eater.com/2020/7/9/21308552/cha-cha-matcha-owners-under-fire) and Hypebae article (https://hypebae.com/2020/7/cha-cha-macha-co-founders-problematic-practices-cultural-appropriation-scandal).

3.    Plaintiffs DANIEL GRAHAM and DEVON HAILSTOCK were two African American employees (among several others directly observed by Plaintiffs) that were forced to endure a hostile work environment due to their race/color.

4.    Despite ongoing and repeated complaints to DEFENDANT CHA CHA MATCHA'S representatives, managers, supervisors and even multiple complaints the CEO of the company (DEFENDANT JAY GUJJAR), Plaintiff's complaints were ignored, denied and rendered futile, while the hostile work environment was condoned, supported, furthered and allowed to persist. Indeed, racially discriminatory practices at CHA CHA MATCHA were so common and accepted that same became part of the corporate culture of CHA CHA MATCHA to Plaintiff and other minority employees.

5.    Plaintiffs complain herein that Defendants' ongoing conduct violated their rights as employees of CHA CHA MATCHA as alleged in detail below.

## JURISDICTION AND VENUE

6.    Jurisdiction of this Court is proper under 42 U.S.C. §12101, *et seq*., and 28 U.S.C. §§ 1331 and 1343.

7.    The Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367.

8.    Venue is proper in this district in that the events or omissions giving rise to the claims

occurred within the Southern District of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

9.    Prior to (and/or at the time of) the commencement of this Action, PLAINTIFF served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York on 11/8/2023, in accordance with the New York City Administrative Code §8-502(c).

## PARTIES

10.    **PLAINTIFF DANIEL GRAHAM (HEREINAFTER "PLAINTIFF GRAHAM")** is a African American, Black, male and is a resident of the State of New York. At all relevant times herein, Plaintiff Graham was and is a "person" and an "employee" entitled to protection as defined by Section 1981, NYSHRL, and NYCHRL.

11.    **PLAINTIFF    DEVON    HAILSTOCK    (HEREINAFTER    "PLAINTIFF HAILSTOCK")** is an African American, Black, male and a resident of State of New York. At all relevant times herein, Plaintiff Hailstock was and is a "person" and an "employee" entitled to protection as defined by Section 1981, NYSHRL, and NYCHRL.

12.    At all relevant times herein, **DEFENDANT CHA CHA MATCHA, INC.** was a New York State corporation and chain specialty food store registered to do business in the State of New York with headquarters located at 373 Broome Street, New York, New York 10013.

13.    Defendant CHA CHA MATCHA, INC. also has locations at 1158 Broadway, New York, NY 10001; 327 Lafayette St, New York, NY 10012; and 501 5th Ave, New York, NY 10017.

14.    Defendant CHA CHA MATCHA, INC is an "employer" as defined by the NYSHRL, and

NYCHRL.

15.     At all relevant times herein, Plaintiffs were employees of Defendant.

16.     **DEFENDANT JAY GUJJAR ("DEFENDANT GUJJAR")** is the CEO of Corporate Defendant CHA CHA MATCHA at all times relevant to the Complaint. As a CEO Defendant Gujjar had the ability to affect the terms and conditions of Plaintiffs' employment. Defendant Gujjar is being sued herein in his individual capacity, and in his official capacity as a manager of CHA CHA MATCHA.

17.     At all relevant times, **DEFENDANT JOSIP DRAZENOVICH ("DEFENDANT DRAZENOVICH")** was a Director of Operations and a District Manager at Defendant CHA CHA MATCHA. As a Director, Defendant Josip had the ability to affect the terms and conditions of Plaintiffs' employment. Defendant Drazenovich is being sued herein in his individual capacity, and in his official capacity as a manager of CHA CHA MATCHA.

### 228 DAY TOLLING OF STATUTE OF LIMITATIONS OF CLAIMS ASSERTED HEREIN UNDER NEW YORK STATE LAW

18.     On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020.

19.     On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020.

20.     Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020.

21.    On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020.

22.    On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020.

23.    On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020.

24.    On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020.

25.    On October 4, 2020, Governor Cuomo issued a further Executive Order, which extended the tolling period to November 3, 2020.

26.    In total, the Executive Orders set forth above provided for a toll of two hundred and twenty-eight (228) days after November 3, 2020.

27.    As per the above, statute of limitations on claims existing in New York prior to March 20, 2020 were tolled, as opposed to suspended.

28.    Accordingly, PLAINTIFFS were afforded an additional 228 days to file their claims under New York State Law, as a matter of New York State statutory law.

### CLAIMS AND CAUSES OF ACTION MADE HEREIN UNDER THE ADULT SURVIVORS ACT

29.    On May 24, 2022, the NYS Legislature enacted the Adult Survivors Act, which created CPLR § 214-j. This provision states:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary . . . every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against such person who was eighteen years of age or older . . . which is barred as of the effective date of

this section because the applicable period of limitation has expired . . . is hereby revived and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section.

30.    As discussed further herein, some of the conduct at issue in this matter constitutes sexual offenses as defined in article one hundred thirty of the penal law.

31.    Other claims asserted herein relate to sexual harassment, sexual assault and discrimination based on Plaintiff Graham's sex and gender.

32.    The sexual conduct of JOSIP DRAZENOVICH against Plaintiff Graham, alleged herein, would constitute (*inter alia*): common law (sexual) battery, criminal assault (NYPL §120.00); criminal forcible touching (NYPL § 130.52); and harassment in the second degree (NYPL § 240.26).

33.    Defendant JOSIP DRAZENOVICH assaulted Plaintiff Graham while acting in furtherance of Defendant Drazenovich's capacity as a manager over Plaintiff Graham and as a manager for Corporate Defendant CHA CHA MATCHA. Defendant Drazenovich's conduct against Plaintiff Graham constitutes sexual harassment and discrimination under NYSHRL, NYCHRL, for which Corporate Defendant CHA CHA MATCHA is strictly liable.

34.    This action is commenced not earlier than six months after the effective date of CPLR § 214-j and not later than one year and six months after the effective date of CPLR § 214-j.

35.    But for the Adult Survivors Act, and the above-cited tolling provisions, some of Plaintiffs' below claims for sexual assault, sexual battery, would not have been actionable. As a result of the Adult Survivors Act, and the below-cited tolling provisions, said claims are timely and must be considered by the Courts, as a matter of New York statutory law.

## MATERIAL FACTS

36.     Defendant CHA CHA MATCHA is part of the specialty food store industry, which

specializes in matcha tea and/or products made with matcha green tea, with four locations

throughout New York City.

37.     Defendant's CHA CHA MATCHA'S flagship store is located at 373 Broome Street, New

York, New York 10013, where the discriminatory conduct herein took place.

### Discriminatory Actions Towards and Around Mr. Graham

38.     In or around September 2017, Plaintiff Graham was hired as a Barista for CHA CHA

MATCHA.

39.     Plaintiff Graham was qualified for his position and performed his duties in an above

satisfactory manner.

40.     In or around 2019, Clay Englehart ("Englehart" white, supervisor), exclaimed, "***What up***

***nigga***" in front of Plaintiff Graham, Plaintiff Hailstock and Francesca Laurent.

41.     In response, Plaintiff Graham told Mr. Englehart generally, "*that is inappropriate*."

42.     In response, Mr. Englehart said, "***yeah try to go to the owner and report me. See what***

***happens because I know nothing is going to happen to me***."

43.     Later that day, Plaintiff Hailstock complained to Gaelle Win Robin ("Mr. Win Robin")

stating, "*Clay [Englehart] keeps calling me the N word*."

44.     Mr. Win Robin replied, "***There is no point of you reporting this to Matthew Morton and***

***Conrad Sandleman because Clay [Englehart] isn't going to get fired***."

45.     Despite Plaintiff Hailstock's complaints to Mr. Win Robin, no disciplinary action was

given and no corrective action was taken.

46.     On the contrary, Plaintiff Hailstock was transferred to the 373 Broome location without

reasonable basis.

47.    Upon information and belief, Plaintiff Hailstock was transferred in retaliation for making complaints of discrimination.

48.    Meanwhile, no action was taken against Mr. Englehart and he was not summarily transferred like Plaintiff Hailstock.

49.    In or around February 2019, Plaintiff Graham began to complain because he was being overloaded with work and was also given work assignments that were not part of his job duties.

50.    At the same time (February 2019), Plaintiff Graham complained to supervisors Mr. Garrett ("Mr. Garrett") and Karen Truescott ("Truescott") stating, "*You are purposely giving me too much work. I am not a manger, and I am being told to do managerial stuff.*"

51.    In response, Garrett and Truscott told Mr. Graham, "*You are terminated. You can sign this contract NDA and an 80-hour severance pay.*"

52.    Mr. Graham did not sign the NDA or severance agreement. Instead, Plaintiff Graham emailed the owners Matthew Morton and Conrad Sandman directly in February 2019 explaining to them that he felt that he was wrongfully terminated.

53.    A few weeks later, Plaintiff Graham was contacted by Truscott, who told Plaintiff to return to work. Truscott's conduct was calculated to send a message to Plaintiff, and to place a chilling effect on Plaintiff's complaint, to show Plaintiff Graham how easy it was to terminate him for complaining.

54.    In or around mid-March 2019, Plaintiff Graham returned to work at Defendant's store and was relocated to the 1158 Broadway, New York, NY 10001 location.

55.    Plaintiff Graham continued to work until in or around March 2020 when the COVID

Pandemic caused mass shutdowns. Plaintiff Graham remained furloughed until June 2021 due to the pandemic.

56.  In or around June 2021, Plaintiff Graham returned to work and was promoted to general manager.

57.  Almost immediately after his return to work, following a staff meeting, Defendant Drazenovich told Mr. Graham in the presence of Mr. Hailstock, "***You can't be serious my n\*gga***."

58.  Plaintiffs were in shock. After Plaintiff Graham looked at him in obvious disgust, Defendant Drazenovich stated in response, "*Oh I am sorry*."

59.  Shortly thereafter, in July 2021, Defendant Drazenovich suddenly forcefully grabbed Plaintiff Graham's buttocks with both hands in the presence of Mr. Hailstock.

60.  Both Plaintiffs were shocked by the sexual violation/assault and left the work floor to discuss what just occurred.

61.  As a manager, Defendant Drazenovich knew and/or should have known that his assault/battery of Plaintiff violated the laws herein and constituted sexual harassment.

62.  Defendant Drazenovich subjected Plaintiff to sexual battery because Plaintiff is a male. But for Plaintiff's gender, Defendant Drazenovich would not have physically humiliated and violated Plaintiff in this manner.

63.  Defendant Drazenovich did not subject female employees to the same or similar physical sexual abuse.

64.  Defendant Drazenovich subjected Plaintiff to the sexual assault because he knew that his assault upon (a male) Plaintiff would be looked at as horseplay (at best) and would not be taken seriously at CHA CHA MATCHA.

65.    Defendant Drazenovich assaulted Plaintiff Graham in this manner to intentionally emasculate Plaintiff in front of his coworkers, specifically because Plaintiff is male.

66.    Evidencing yet further discriminatory motivations, in or around August 2021, Defendant Drazenovich called a female employee (referred to herein as Rosemary [last name unknown]) that she "*is a cunt*." This discriminatory comment was made in front Plaintiff Graham and a female employee named Selina Wolman ("Ms. Wolman").

67.    In or around August 2021, Wolman was being whipped with a wet rag by a male employee named W. Perkins, while Plaintiff and Defendant Drazenovich were present.

68.    Plaintiff was extremely uncomfortable, but Defendant Drazenovich responded by laughing, taking his camera out to record, while encouraging Mr. Perkins to continue the humiliating conduct for the camera.

69.    This, as well as Defendant Drazenovich's other discriminatory conduct in the store cause Plaintiff to understand that Defendant Drazenovich treated harassment (including assaults) and discrimination in the workplace as jokes.

70.    On or about October 18, 2021, during discussions with Plaintiff Graham, Defendant Drazenovich told Mr. Graham (in sum and substance), "*I was dating his black girl and she was aggravated when I said the word nigga, so I just did it to aggravate her and now I can't stop saying nigga*."

71.    Plaintiff Graham was shocked and disgusted by Defendant Drazenovich's disclosure and how he was amused by humiliating his Black ex-girlfriend by taunting her with the N-Word.

72.    Indeed, Defendant Drazenovich carried his racist behavior into the workplace and appeared to get enjoyment from using the N-Word and upsetting African American employees by

using the word.

73. Approximately one week later, on October 25, 2021, despite Mr. Graham's objection to Defendant Drazenovich's casual repeated use of the N-word, Defendant Drazenovich told Mr. Graham, "***You're the nigga.***"

74. This discriminatory comment was made in front of manager Leandro McPhee (Caucasian male), who was unmoved by same and took no action to correct or prevent Defendant Drazenovich.

75. Mr. Drazenovich's racially charged commentary and repeated nonchalant use of the "N-word" in the workplace was causing the environment to become hostile and intolerable to Plaintiff Graham.

76. On July 9th and July 10, 2020, various news articles were published about DEFENDANT CHA CHA MATCHA describing horrible discriminatory working conditions and ongoing complaints made by CHA CHA MATCHA employees about the racially hostile work environment.

77. In late January 2022, Plaintiff Graham, while discussing the articles with Defendant Drazenovich, stated that he believed that Defendant CHA CHA MATHCA discriminates against it minority employees and that the article was accurate in many ways.

78. In response, Defendant Drazenovich laughed, cavalierly dismissed Plaintiff Graham's concerns and stated, that CHA CHA MATCHA is "*hiring a brown CEO and a brown director of operations, so there's no way they can be racist right now.*"

79. Defendant Drazenovich also brought up the company and owners' checkered past with racism, while making inappropriate discriminatory remarks about the issue.

80. Defendant Drazenovich made Plaintiff Graham feel incredibly uncomfortable.

81.    As a result, in or around February 2022, soon after his conversation with Defendant Drazenovich about the articles, Plaintiff Graham escalated his complaints to Defendant CHA CHA MATCHA'S CEO Defendant JAY GUJJAR, via e-mail stating,

> *"[Drazenovich] is out of line and I can't take his discriminatory treatment any longer. He is constantly inappropriate and is always on drugs and selling drugs. He is disrespectful and it's because of him that we work in a hostile work environment. He even showed up to work intoxicated and harassed me by making a slew of inappropriate comments about me and fellow employees. I fear for retaliation."*

82.    Defendant Gujjar replied generally, "***I don't think that is what is happening here***."

83.    PLAINTIFF GRAHAM then met with Defendant Gujjar and Defendant Drazenovich a few days later.

84.    During the meeting, Plaintiff Graham explained Defendant Drazenovich's discriminatory behavior and alleged that Defendant Drazenovich's conduct was causing a hostile work environment for everyone at the New York and Los Angeles CHA CHA MATCHA locations.

85.    In response, Defendant Gujjar immediately defended the company and Defendant Drazenovich, while completely disregarding Plaintiff Graham's complaint.

86.    Following the meeting, Defendant Gujjar did nothing in response and took no action to investigate Plaintiff Graham's claims.

87.    Indeed, Defendant Gujjar did not ask Defendant Drazenovich if any of Plaintiff Graham's allegations were true before summarily dismissing Plaintiff Graham's complaints.

88.    Defendant Gujjar did not forward Plaintiff Graham's concern to anyone or any department charged with the responsibility of resolving and investigating complaints of discrimination.

89.    Defendant CHA CHA MATCHA took no action to address or investigate Plaintiff Graham's complaint and same was rendered futile.

90.    CHA CHA MATCHA'S EEO policies, if any, were futile. If they existed, Defendants definitely did not take them seriously.

91.    Plaintiff Graham could not get a resolution to his complaints by complaining to the top managers, directors or representatives of CHA CHA MATCHA.

92.    DEFENDANT CHA CHA MATCHA did not train or supervise individual Defendants with regard to discrimination in the workplace, nor did they instruct Individual Defendants on how to address employee complaints.

93.    Knowing that he could not continue to face daily abuse, and that the environment would get worse now that Plaintiff Graham complained to the CEO (Defendant Gujjar) to no avail, Plaintiff Graham felt compelled to resign from his employment at CHA CHA MATCHA.

94.    Though Plaintiff reiterated that he was resigning due to the hostile work environment and ongoing discriminatory practices by Defendant Drazenovich, in response, Defendant Gujjar emailed Plaintiff Graham's personal email and requested that Plaintiff Graham return his work computer.

95.    Clearly, Defendant Gujjar did not care about Plaintiff's Graham's concerns or complaints, or the fact that Plaintiff Graham was resigning due to the intolerable work environment.

### Discriminatory Actions Towards and Around Mr. Hailstock

96.    On or about August 29, 2018, Mr. Hailstock was hired by Defendant as a barista.

97.    Mr. Hailstock's responsibilities included but were not limited to serving customers.

98.    Mr. Hailstock was initially hired for the 1158 Broadway location.

99.    In the beginning of Mr. Hailstock's employment, his managers were Matthew Tejada ("Mr. Tejada") and Jules Manoogian ("Ms. Manoogian").

100.   On or about January 7, 2019, Mr. Hailstock was given an annual company performance

review in which he received the highest score listed as "exceeds expectations in all areas, model team member, ready for advancement."

101. As a result, Plaintiff Hailstock was given a performance-based raise.

102. As reflected by his performance review and raise[s], Plaintiff Hailstock was qualified for his position and his work performance met or exceeded the reasonable expectations of Defendant.

103. In or around September 2018, Plaintiff Hailstock relocated to the Lafayette Street location.

104. At the Lafayette Street Location, the shift lead was Clay Englehart ("Mr. Englehart", a white male).

105. In or around March 2019, while working a shift together with Mr. Englehart, Mr. Englehart began rapping a song and used the "*N-Word*" multiple times in the presence of Plaintiff Hailstock and other employees.

106. Plaintiff Hailstock told Mr. Englehart that his use of the "N-word" made Plaintiff Hailstock very uncomfortable to which Mr. Englehart apologized and assured him it would never occur again.

107. Plaintiff Hailstock then spoke to his then manager, Gaelle Win Robin ("Mr. Win Robin") to complain and to express his concerns.

108. Mr. Win Robin advised Mr. Hailstock that despite his complaint, "***nothing would happen [Mr. Englehart]***" because he was allegedly a family friend of one of the co-owners of CHA CHA MATCHA.

109. Notwithstanding Mr. Engelhart's apology and assurances, just two weeks later, again, Mr. Englehart repeated the "*N-Word*" while reciting the words of a song in the workplace.

110. Feeling disrespected and tormented, Plaintiff Hailstock then asked Englehart to not speak

to him again unless it was regarding work-related business.

111.    Over the following weeks, in retaliation for Plaintiff Hailstock's complaint, Mr. Englehart complained to Mr. Win Robin stating that Plaintiff Hailstock was avoiding him and that he felt uncomfortable.

112.    Instead of recognizing the clear retaliatory nature of Mr. Engelhart's behavior, Mr. Win Robin condoned it and told Plaintiff Hailstock that he would have to either transfer to the Broome Street location or be terminated.

113.    No suggestion was made to transfer Win Robin or to correct his discriminatory behavior in the workplace.

114.    On or about May 4, 2020, another employee contacted Plaintiff Hailstock, complained that Mr. Englehart continued to use the derogatory term ("N-Word") and again faced no consequences.

115.    Plaintiff Hailstock knew and understood that Englehart was subjecting Plaintiffs and other African American employees to the same uncomfortable racially-charged behavior.

116.    There were multiple occasions in which Mr. Hailstock heard Mr. Englehart say the "*N-Word*" or heard from other employees that Mr. Englehart was continuing to say the "*N-Word*" with impunity in the workplace.

117.    In or around November 2019, Mr. Hailstock elected to be transferred to the Broome Street location.

118.    On or about March 15, 2020, Plaintiff Hailstock was furloughed due to the COVID-19 pandemic.

119.    On or about June 4, 2021, Plaintiff Hailstock returned to work from furlough.

120.    Upon Plaintiff Hailstock's return, in or around June 2021, Defendant Drazenovich became

Plaintiff Hailstock's manager.

121.    Defendant Drazenovich took over as Director of Operations, District Manager, and by his own account, Human Resources.

122.    Upon returning to work, Plaintiff Hailstock found the store to be in deplorable conditions. The store's machinery had not been cleaned since the March 2020 closing and was infested with maggots, cockroaches, mice and covered in mold, among other things.

123.    Defendant Drazenovich tasked Plaintiff Hailstock with cleaning the machinery and returning the store to appropriate conditions to reopen.

124.    On or about June 21, 2021, Plaintiff Hailstock was promoted to Shift Lead at the 373 Broome and 327 Lafayette locations.

125.    Throughout his tenure with Defendant CHA CHA MATCHA, Plaintiff Hailstock observed a variety of discriminatory and concerning remarks made to and about his coworkers, such as observing management making fun of employees because of their disabilities.

126.    Defendant Drazenovich was known to frequently make fun of an employee, who suffered from mental disabilities, by joking about how "***crazy***" the employee was.

127.    On or about July 3, 2021, Defendant Drazenovich texted Plaintiff Graham and referred to Plaintiff  Hailstock as "***cunty***."

128.    Plaintiff Hailstock was aware of the discriminatory epithet.

129.    Defendant Drazenovich was comfortable referring to Plaintiff Hailstock in derogatory and discriminatory ways while discussing Hailstock with other employees in the workplace.

130.    Defendant Drazenovich also texted Plaintiff Graham telling him to not speak to upper management about anything and to go directly to him with problems or issues.

131.    Upon information and belief, in or around August 2021, Defendant Drazenovich had

another black employee, Chidi [last name unknown] ("Chidi") fired.

132.    Chidi was another African American/Black employee whom Defendant Drazenovich seemed to focus-in on for discriminatory abuse, like Plaintiffs.

133.    Following Chidi's termination, Drazenovich told his remaining employees to retaliate against Chidi if he showed up at any of Defendant's locations.

134.    Upon information and belief, upon learning that Chidi was hired at a bar called "Mr. Purple", Defendant Drazenovich stated to multiple employees that he was "*very well connected in the café, restaurant and bar industry*" and that he allegedly "*knew the owner of Mr. Purple and  would find a way to get him [Chidi] fired*."

135.    This caused Plaintiff Hailstock to fear that Defendant Drazenovich could affect his employment(s) elsewhere if Plaintiff Hailstock complained about or angered Defendant Drazenovich.

136.    Throughout his tenure working for Defendant, Plaintiffs understood that management could not only fire employees without reason but could also use their connections to get former employees terminated from their new positions at other locations.

137.    On or about August 27, 2021, after a team meeting, Defendant Drazenovich said, "***It's cool if I say N\*gga***" in the presence of Plaintiff Hailstock, Plaintiff Graham and another employee.

138.    Similarly, on or about October 31, 2021, Defendant Drazenovich texted Plaintiff Graham and threatened him by saying "*when Conrad [(co-owner of Defendant Cha Cha Matcha)] wants to be a dick…fuck him saying something about the story*."

139.    He proceeded to text "*He'll just fire and make it look like someone else's decision, it'll be me first. He's on another level. You know this. He's rich, smart, and very mean if he feels*

*like it. I'd like to keep the peace we've been having...*"

140. Throughout Plaintiffs' employment at Defendant CHA CHA MATCHA, they were routinely expected to complete their work and the work of their white coworkers that was not being completed due to excessive absences and/or tardiness.

141. Plaintiffs complained about the disparate treatment, but no action was taken to correct same.

### Defendant's Tolerance of Discriminatory Harassment

142. Throughout their tenure with Defendant CHA CHA MATCHA, Plaintiffs witnessed many instances of sexual harassment by management.

143. In or around November 2018, Mr. Englehart and Plaintiff Graham were sent to Los Angeles to train employees for the grand opening of a new store.

144. On or about December 9, 2018, Mr. Englehart was accused of sexual misconduct by a female employee Kelli [last name unknown] ("Kelli").

145. Upon information and belief, Mr. Englehart was not disciplined or penalized for the allegations of sexual misconduct against him.

146. Instead, Mr. Englehart was able to return to work in New York.

147. Upon Mr. Englehart's return to work, more accusations of sexual misconduct against him surfaced. Specifically, by Christiana Birch ("Ms. Birch").

148. Ms. Birch spoke out stating that she was being sexually harassed by Mr. Englehart.

149. Upon information and belief, Mr. Englehart faced no consequences in relation to the accusations of sexual assault by Ms. Birch.

150. As noted above, in or around July 2021, Defendant Drazenovich grabbed Plaintiff Graham's buttocks and sexually violated Plaintiff Graham in the presence of Plaintiff

Hailstock.

151.   Upon information and belief, Defendant Drazenovich faced no consequences for his sexual assault of Plaintiff Graham because Plaintiff Graham is a male.

152.   Because Plaintiff Graham was/is a male employee, Defendant CHA CHA MATCHA did not take the abuse seriously, to the detriment of Plaintiff Graham.

153.   Defendant Drazenovich would not have subjected a similarly situated female employee to the same abusive sexual assault.

154.   In or around August 2021, Ms. Wolman, a female employee, was being whipped with a wet rag by a male co-worker, Mr. Perkins in the presence of Plaintiff Graham and Defendant Drazenovich.

155.   Defendant Drazenovich responded by laughing, taking his camera out to record it, and encouraging Mr. Perkins to do it again for the camera.

156.   Plaintiff Graham was mortified by Defendant Drazenovich's inappropriate behavior in condoning and encouraging male employees to act inappropriately against female employees.

157.   Upon information and belief, in or around August 2021, Defendant Drazenovich told Plaintiff Graham, speaking of a transgendered employee, "***I only promoted the tranny so she wouldn't file a sexual assault case against me***."

158.   In or around August 2021, and throughout Graham's employment, Defendant Drazenovich would typically ask inappropriate questions to a regular customer and make inappropriate comments in front of Plaintiff Graham, Mr. Gomez, and the female customer.

159.   Defendant Drazenovich would generally say words to the effect of; "*What type of butt implants she got*;" "*I don't know why you got your ass done now. In forty years, it is going*

*to drop and look bad*."

160.   Defendant Drazenovich would then attempted to lure Plaintiff's Hailstock and Graham into sexual conversations about the female customer.

161.   Specifically, Defendant Drazenovich stated that he "*would sleep with her*;" and asked Plaintiff's if they would "*date her*" and/or "*have sex with*" her given her implants.

162.   In response, Plaintiff Hailstock replied, that he did not want to get involved in the sexual discussions and that Defendant Drazenovich, "*should let women take agency over their own bodies*."

163.   Plaintiff Graham further replied, "*Yeah, I agree*" and advised Defendant Drazenovich that he did not want to take part in the discussions as well.

164.   In response, Defendant Drazenovich stated that he "*wasn't being that serious*" and asked the customer if she was "cool with" him talking about her body.

165.   The female customer responded that Defendant Drazenovich's commentary made her uncomfortable, especially since her three friends were present and witnessed the inappropriate inquiry.

166.   In or around September 2021, in the basement of the Broome St. location, Defendant Drazenovich invited Defendant Graham to watch pornography in the workplace, saying: "***Come look at this porn***."

167.   Defendant Drazenovich made the same request to other male employees and brought employees Leo, Erick [last name unknown] ("Erick") and Nick [last name unknown] ("Nick") into the basement while on shift to show them a porn video.

**<u>Defendants Consistently Discouraged Plaintiffs from Contacting Upper
Management to Complain About the Hostile Work Environment</u>**

168.   On the same day in September 2021, Plaintiff Hailstock witnessed Defendant Drazenovich

refer to a female employee (Rosemary) in a sexually discriminatory and derogatory manner while in front of Plaintiff Hailstock and a female employee (Serena).

169.    In response, Serena expressed concerns about the discriminatory language against a female employee and immediately told Defendant Drazenovich that she was going to contact HR to make a complaint.

170.    In response, Defendant Drazenovich shrugged-off Rosemary's concern and responded, "*I am HR*" and made it known that there was no place to complain.

171.    Defendant Drazenovich's callous response shocked Plaintiff Hailstock.

172.    Immediately following, the female employee Serena resigned from her employment at CHA CHA MATCHA.

173.    Defendant Drazenovich made it clear that protected activity and complaints of discrimination against him would go nowhere at CHA CHA MATCHA.

174.    Throughout his time as Director of Operations, Defendant Drazenovich would tell Plaintiffs and staff, "*Good luck, I am HR*" in response to their complaints.

175.    Furthermore, for many months Defendant Drazenovich would continue to refer to himself as "*HR*" and went so far as to tell employees, to not send HR an email because he would be the one receiving it.

176.    On or about February 11, 2022, Plaintiff Hailstock contacted the CEO, Defendant Gujjar, to state his concerns and complain about the hostile work environment, treatment, and conditions under Defendant Drazenovich.

177.    Plaintiff Hailstock's first email to Defendant Gujjar received no response and was ignored. Plaintiff's Hailstock's second follow up email to Defendant Gujjar received what seemed to be an automated company generated response.

178.    Defendant Gujjar had no issues responding to other emails and communications. However, he seemed to intentionally ignore complaints about the hostile work environment – to the detriment of CHA CHA MATCHA'S complaining employees.

179.    After receiving no response and seeing that it was clear that Defendant CHA CHA MATCHA would take no action to address the hostile work environment in which he was forced to work, Plaintiff Hailstock felt left with no choice but to resign his employment.

180.    The hostile ongoing discriminatory hostile work environment at CHA CHA MATCHA became too frequent and intolerable for Plaintiff Hailstock, which caused Plaintiff Hailstock to feel compelled to resign.

181.    Defendant Drazenovich's ongoing and systematic discriminatory work environment was enough to compel any reasonable employee to leave CHA CHA MATCHA.

182.    Collective Defendants' conduct described above constituted a **continuing violation** of Plaintiffs' rights under the laws herein.

183.    As a direct result of the wrongful and oppressive actions of Defendant CHA CHA MATCHA and its staff, Plaintiffs were subjected to unlawful discrimination, harassment, humiliation and experienced a hostile work environment causing them embarrassment, discriminatory ridicule, and hostility, in addition to increased anxiety and mental and emotional trauma.

184.    As a result of the Defendant's actions, Plaintiffs were unlawfully treated, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

185.    As a result of the acts and conduct complained of herein, Plaintiffs have suffered a loss of income by way of the loss of salary/pay, special damages, loss of employment, loss of employment opportunities, loss to benefits and other compensation which such

employment entails.

186.    Plaintiffs also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

187.    As a result of the acts and conduct complained of herein, Plaintiffs suffered and will continue to suffer emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiffs have further experienced severe emotional and physical distress.

188.    Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiffs demand Punitive Damages as against Defendant.

**FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER SECTION 1981**
*(As and Against Corporate Defendant CHA CHA MATCHA)*

189.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

190.    42 U.S.C. § 1981 states in relevant part as follows:

> All persons within the jurisdiction of the United States shall have the same right in  every State and Territory to make and enforce contracts, to sue, be parties, give  evidence, and to the full and equal benefit of all laws and proceedings for the security  of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no  other.

191.    As described herein, the Defendant CHA CHA MATCHA discriminated against Plaintiffs on the basis of their race in violation of Section 1981 by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, disparate treatment of black and African American employees of Defendant CHA CHA MATCHA.

192.    Plaintiffs were subjected to disparate treatment as compared to their similarly situated Caucasian coworkers.

193.    Plaintiffs were subjected to a hostile work environment that was permeated with racially discriminatory language (against themselves and other employees of which they were aware), verbal abuse, adverse employment actions, failures to remedy the hostile environment.

194.    The conduct against Plaintiff's were motivated, in whole or in part, upon Plaintiffs' race.

195.    As a result of the unlawful discriminatory conduct of the Defendant CHA CHA MATCHA in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, loss of employment, loss of employment opportunities, lost wages, loss of benefits, inconvenience, constructive discharge, special damages, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

196.    The unlawful discriminatory actions of Defendant CHA CHA MATCHA constitutes malicious, willful, and wanton violations of Section 1981, for which Plaintiffs are entitled to the maximum allowable damages under this statute and an award of punitive damages.

**SECOND CAUSE OF ACTION**
**FOR RETALITION UNDER SECTION 1981**
*(As and Against Corporate Defendant CHA CHA MATCHA)*

197.    Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

198.    Though the plain language of Section 1981 does not specifically reference retaliation, the view that Section 1981 "encompasses retaliation claims is indeed well-embedded in the

law." *CBOCS West Inc. v. Humphries*, 553 U.S. 442, 451 (2008).

199.    As described herein, Plaintiffs engaged in protected activities, including but not limited to, voicing concerns, and drafting multiple written complaints regarding discrimination and the hostile work environment. Plaintiff Graham even complained to the CEO of CHA CHA MATCHA to no avail.

200.    As described herein, after Plaintiffs engaged in activities protected by Section 1981, Defendant CHA CHA MATCHA took adverse actions against Plaintiffs in retaliation, which would cause any reasonable employee from making or supporting a similar complaint of discrimination.

201.    But for Plaintiff's complaints and engagement in protected activities, Plaintiffs would not have been subjected to the above-described retaliatory conduct.

202.    Also, Defendants outright refused to act or to correct the known hostile work environment at CHA CHA MATCHA, to the detriment of Plaintiffs and others, and condoned the (known) discriminatory conduct of its employees against Plaintiffs as alleged above.

203.    As a result of the unlawful discriminatory conduct of the Defendant CHA CHA MATCHA in violation of Section 1981, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, loss of employment, loss of employment opportunities, lost wages, loss of benefits, inconvenience, constructive discharge, special damages, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

204.    Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiffs are entitled to the maximum allowable

damages under this statute and an award of punitive damages.

**THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NYSHRL**

205.   Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

206.   NYS Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, **race,** creed, **color,** national origin, sexual orientation, military status, **sex**, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

207.   As described herein, Defendants discriminated against Plaintiffs on the basis of their race/color and against Mr. Graham on the basis of his sex in violation of NYSHRL, by subjecting them to disparate treatment, abuse, and creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment.

208.   The conduct against Plaintiffs were motivated, in whole or in part, upon Plaintiffs' race/color and/or, in the case of Mr. Graham, upon his sex/gender.

209.   As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiffs suffered, and continue to suffer, economic loss, for which they are entitled to an award of monetary damages and other relief.

210.   As a result of the unlawful discriminatory conduct of the Defendant CHA CHA MATCHA, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, loss of

26

employment, loss of employment opportunities, lost wages, loss of benefits, inconvenience, constructive discharge, special damages, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

211. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the <u>NYSHRL</u>, for which Plaintiffs are entitled to the maximum allowable damages under this statute and an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NYSHRL**

212. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

213. <u>Executive Law</u> § 296 provides that:

> "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

214. As described herein, Plaintiffs engaged in protected activities, including but not limited to, voicing, and drafting email complaints regarding discrimination on the basis of their race.

215. As described herein, after Plaintiffs engaged in activities protected by the <u>NYSHRL</u>, Defendant took adverse employment actions against Plaintiffs that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

216. But for Plaintiff's complaints and engagement in protected activities, Plaintiffs would not have been subjected to the above-described retaliatory conduct.

217. As a result of the unlawful discriminatory conduct of the Defendant CHA CHA MATCHA, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional

distress, including, but not limited to depression, humiliation, embarrassment, loss of employment, loss of employment opportunities, lost wages, loss of benefits, inconvenience, constructive discharge, special damages, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

218.  Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the <u>NYSHRL</u>, for which Plaintiffs are entitled to the maximum allowable damages under this statute and an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**FOR *DISCRIMINATION & RETALIATION***
<u>**UNDER NEW YORK STATE EXECUTIVE LAW  - *DIRECT ACTOR* and *AIDER AND***</u>
*<u>**ABETTOR LIABILITY**</u>*
*(As and Against Individual Defendants GUJJAR and DRAZENOVICH)*

164.   PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

165.   <u>New York State Executive Law</u> §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

166.   Individual Defendant DRAZENOVICH engaged in an unlawful discriminatory practice in violation of <u>New York State Executive Law</u> §296(6) by **aiding, abetting,** inciting, compelling and coercing the discriminatory and retaliatory conduct of the CORPORATE DEFENDANT CHA CHA MATCHA, against PLAINTIFF.

167.   Defendant DRAZENOVICH is liable for aiding and abetting DEFENDANT CHA CHA MATCHA in the discrimination and wrongful retaliation faced by Plaintiffs.

168.   Defendant DRAZENOVICH is also liable for his direct discriminatory conduct against

Plaintiffs as alleged above.

169.    Defendant DRAZENOVICH subjected PLAINTIFF Graham to unlawful sexual battery and discrimination when he grabbed and assaulted Plaintiff in sexual ways.

170.    Defendant DRAZENOVICH did not treat female employees in such an abusive manner. Further, if Plaintiff Graham were female and complained about being physically sexually assaulted by the male manager, DEFENDANT CHA CHA MATCHA would have taken appropriate actions.

171.    Because Plaintiff Graham was/is a male employee, Defendant CHA CHA MATCHA did not take the abuse seriously, to the detriment of Plaintiff Graham.

172.    Defendant DRAZENOVICH aided and abetted the discriminatory practices of his employer, DEFENDANT CHA CHA MATCHA in the unlawful practices against Plaintiffs as asserted herein.

173.    Defendant GUJJAR was made well aware of the ongoing and discriminatory hostile work environment Plaintiff suffered under his leadership at CHA CHA MATCHA.

174.    Plaintiffs complained on multiple occasions to Defendant GUJJAR, who failed to take action against discriminatory offenders.

175.    Defendant Gujjar, through his own conduct, helped to render any and all anti discriminatory policies at CHA CHA MATCH futile, to the detriment of Plaintiffs.

176.    Defendant Gujjar condoned, supported, aided, abetted and furthered discriminatory practices of his employer CHA CHA MATCHA in the workplace, to the detriment of Plaintiffs.

177.    As a result, PLAINTIFFS were unlawfully humiliated, degraded and belittled, suffered a violation of their rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment

benefits, humiliation, stress, anxiety, embarrassment, special damages and emotional distress. Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

178.   Defendant DRAZENOVICH'S conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

179.   PLAINTIFFS are entitled to the maximum amount of damages allowed under this statute.

## SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL

219.   Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

220.   New York City Administrative Code §8-107(1) provides that it shall be an unlawful discriminatory practice:

> For an employer or an employee or agent thereof,
> because of the actual or perceived age, **race**, creed,
> **color**, national origin, **gender**, disability, marital status,
> sexual orientation or alienage or citizenship status of
> any person, to refuse to hire or employ or to bar or
> to discharge from employment such person or to
> discriminate against such person in compensation
> or in terms, conditions or privileges of employment.

221.   Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, a toxic work culture, a hostile work environment and otherwise discriminating against Plaintiffs because of their race/color and/or, in the case of Mr. Graham, his sex/gender.

222.   The conduct against Plaintiffs were motivated, in whole or in part, upon Plaintiffs' race/color and/or, in the case of Mr. Graham, his sex/gender.

30

223.    As a result of the unlawful discriminatory conduct of the Defendant CHA CHA MATCHA, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, loss of employment, loss of employment opportunities, lost wages, loss of benefits, inconvenience, constructive discharge, special damages, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

224.    Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the <u>NYSHRL</u>, for which Plaintiffs are entitled to the maximum allowable damages under this statute and an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NYCHRL**

225.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

226.    The <u>New York City Administrative Code</u> §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter…"

227.    Defendants engaged in an unlawful discriminatory set of practices in violation of the NYCHRL by discriminating and retaliating against Plaintiffs for their opposition to the unlawful employment practices of the Defendants.

228.    As a result of the unlawful discriminatory conduct of the Defendant CHA CHA MATCHA, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, loss of employment, loss of employment opportunities, lost wages, loss of benefits,

inconvenience, constructive discharge, special damages, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

229.    Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the <u>NYSHRL</u>, for which Plaintiffs are entitled to the maximum allowable damages under this statute and an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
**FOR *DISCRIMINATION & RETALIATION***
<u>**UNDER NEW YORK CITY HUMAN RIGHTS LAW**</u> *- DIRECT ACTOR* **and** *AIDER*
*AND ABETTOR LIABILITY*
*(As and Against Individual Defendant DRAZENOVICH)*

180.    PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

181.    The <u>New York City Administrative Code</u> § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under the chapter, or attempt to do so."

182.    INDIVIDUAL DEFENDANTS engaged in an unlawful discriminatory practice in violation of <u>New York City Administrative Code</u> § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory and unlawful conduct.

183.    Defendant DRAZENOVICH is liable for aiding and abetting DEFENDANT CHA CHA MATCHA in the discrimination and wrongful retaliation faced by Plaintiffs.

184.    Defendant DRAZENOVICH is also liable for his direct discriminatory conduct against Plaintiffs as alleged above.

185.    Defendant DRAZENOVICH subjected PLAINTIFF Graham to unlawful sexual battery and discrimination when he grabbed and assaulted Plaintiff in sexual ways.

186.    Defendant DRAZENOVICH did not treat female employees in such an abusive manner. Further, if Plaintiff Graham were female and complained about being physically sexually assaulted by the male manager, DEFENDANT CHA CHA MATCHA would have taken appropriate actions.

187.    Because Plaintiff Graham was/is a male employee, Defendant CHA CHA MATCHA did not take the abuse seriously, to the detriment of Plaintiff Graham.

188.    Defendant Drazenovich also subjected Plaintiffs to an ongoing racially hostile and humiliating work environment that was permeated with ridicule, insults, racial epithets, derogatory language against Plaintiff and others, due to their protected characteristics.

189.    As a manager, Defendant DRAZENOVICH and CHA CHA MATCHA are strictly liable for Defendant DRAZENOVICH'S conduct (or lack thereof) against Plaintiffs.

190.    Defendant DRAZENOVICH aided and abetted the discriminatory practices of his employer, DEFENDANT CHA CHA MATCHA in the unlawful practices against Plaintiffs as asserted herein.

191.    Defendant GUJJAR was made well aware of the ongoing and discriminatory hostile work environment Plaintiff suffered under his leadership at CHA CHA MATCHA.

192.    Plaintiffs complained on multiple occasions to Defendant GUJJAR, who failed to take action against discriminatory offenders.

193.    Defendant Gujjar, through his own conduct, helped to render any and all anti discriminatory policies at CHA CHA MATCH futile, to the detriment of Plaintiffs.

194.    Defendant Gujjar condoned, supported, aided, abetted and furthered discriminatory practices of his employer CHA CHA MATCHA in the workplace, to the detriment of Plaintiffs.

195.    As a result, PLAINTIFFS were unlawfully humiliated, degraded and belittled, suffered a

violation of their rights, mental and emotional distress, loss of income/earnings, inconvenience, pain and suffering, extreme financial hardship, loss of employment, loss of employment benefits, humiliation, stress, anxiety, embarrassment, special damages and emotional distress. Plaintiffs also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

196.    Defendant Drazenovich's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

197.    PLAINTIFFS are entitled to the maximum amount of damages allowed under this statute.

**AS A NINTH CAUSE OF ACTION**
**COMMON LAW BATTERY**
*(Against Individual Defendant Drazenovich)*

198.    PLAINTIFF GRAHAM repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

199.    This cause of action is being brought pursuant to the NYS Adult Survivors Act.

200.    As alleged above, in July 2021, Defendant Drazenovich suddenly forcefully grabbed Plaintiff Graham's buttocks with both hands in the presence of Mr. Hailstock, while in the workplace.

201.    Defendant Drazenovich intended to grab Plaintiff Graham.

202.    In doing so, Defendant Drazenovich intended to, and did, subject Plaintiff Graham to harmful offensive sexual contact and harassment.

203.    Plaintiff Graham did not give Defendant Drazenovich authority or consent to grab Plaintiff Graham' sexual part(s) in any manner.

204.    It was foreseeable to Defendant Drazenovich that his offensive grabbing of Plaintiff Graham would cause injuries to Plaintiff Graham.

205.    As a direct result of being assaulted and battered by Defendant Drazenovich, Plaintiff Graham

suffered injuries, emotional pain/suffering/distress, humiliation, anger, stress, anxiety, embarrassment, special damages. Plaintiff also suffered future pecuniary losses, inconvenience, loss of enjoyment of life and other non-pecuniary losses.

206. Defendant Drazenovich's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

207. Plaintiff Graham is entitled to the maximum amount of damages allowed under this statute.

## PUNITIVE DAMAGES ARE APPROPRIATE

208. Punitive damages are appropriate against all Defendants because their actions were willful, malicious, and committed with reckless disregard for the rights of PLAINTIFFS.

## JURY DEMAND

209. PLAINTIFFS hereby demand a jury trial.

**WHEREFORE**, Plaintiffs respectfully requests a judgment against Defendant:

A.    Declaring that Defendant engaged in unlawful employment practices prohibited by Section 1981, the New York State Human Rights Law, and the New York City Human Rights Law, in that Defendants discriminated against Plaintiffs on the basis of their race and color and subjected them to a racist and hostile work environment.

B.    Awarding damages to Plaintiffs for all lost wages and benefits resulting from Defendants' unlawful discrimination, and to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

C.    Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injuries to their reputation in an amount to be proven;

D.    Awarding Plaintiffs punitive damages;

E.    Awarding Plaintiffs attorneys' fees, costs, disbursements, and expenses incurred in the

prosecution of the action; and

F.      Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendant's unlawful employment practices.

Dated: Garden City, New York
        March 15, 2024

                                        **PHILLIPS & ASSOCIATES,**
                                        **ATTORNEYS AT LAW, PLLC**

                                        _____/s/_____
                                        Joshua Friedman
                                        585 Stewart Avenue, Suite 430
                                        Garden City, New York 11530
                                        T: (212) 248-7431
                                        F: (212) 901-2107
                                        jfriedman@tpglaws.com