UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANIEL GRAHAM and DEVON HAILSTOCK,

        Plaintiffs,

  -against-

CHA CHA MATCHA, INC., JAY GUJJAR, *individually and in his official capacities*, and JOSIP DRAZENOVICH,

        Defendants.

Case No. 1:23-cv-09911-PAE

## REPLY BRIEF IN FURTHER SUPPORT OF PARTIAL MOTION TO DISMISS

Christopher M. Helsel
O'HAGAN MEYER PLLC
2560 Huntington Avenue, Suite 204
Alexandria, Virginia 22303
T: (703) 775-8609
E: chelsel@ohaganmeyer.com

Tamara S. Grimm
O'HAGAN MEYER PLLC
1717 Arch Street, Suite 3910
Philadelphia, Pennsylvania 19103
T: (215) 461-3306
E: tgrimm@ohaganmeyer.com

*Counsel for Defendants Cha Cha Beverages LLC i/s/h/a Cha Cha Matcha, Inc. and Jay Gujjar*

Defendants Cha Cha Beverages LLC i/s/h/a Cha Cha Matcha, Inc. ("Cha Cha") and Jay Gujjar (collectively, the "Moving Defendants"), by counsel, hereby submit this brief in reply to the Plaintiffs' brief in opposition to the Moving Defendants' partial motion to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (the "Opposition" or "Opp. Brief") (ECF Doc. No. 22). In addition to the arguments set forth herein, which respond directly to points raised in the Opposition, the Moving Defendants reiterate the arguments set forth in their memorandum of law in support of the partial motion to dismiss (ECF Doc. No. 21).

## ARGUMENT

At the outset, the Moving Defendants note that the Plaintiffs do not oppose the portions of the motion which seek the dismissal of their retaliation claims (Counts II, IV and VII[1]), the claims against Defendant Jay Gujjar (Counts V and VIII), and all hostile work environment claims grounded upon discrete acts that occurred prior to November 9, 2019 (Section 1981 – Count I [in part]) or prior to October 20, 2019 (NYSHRL and NYCHRL – Counts III and VI [in part]). Accordingly, those claims should all be dismissed. *See Black Lives Matter v. Town of Clarkstown*, 354 F. Supp. 3d 313, 328 (S.D.N.Y. 2018) (holding that "the failure to oppose a motion to dismiss a claim is deemed abandonment of the claim").

In addition, with regard to Counts I, III and VI, the Opposition references only the Plaintiffs' hostile work environment claims. Although they were not clearly delineated in the Amended Complaint, discrimination and hostile work environment are different causes of action with different pleading requirements.[2] *See Benson v. Westchester Med. Ctr.*, 2022 U.S. Dist. LEXIS 123143 at *26

---

[1] All references herein to "Counts" refer to the Plaintiffs' Amended Complaint (ECF Doc. No. 19.)

[2] As described in the Moving Defendants' memorandum of law, the Plaintiffs appear to have originally attempted to allege both discrimination and hostile work environment claims, but confusingly joined them together as "discrimination" claims under Section 1981, the NYSHRL and the NYCHRL.

(S.D.N.Y. July 12, 2022) (noting that the "plaintiffs' three theories of liability—discrimination, hostile work environment, and retaliation—ought to have each been raised as standalone claims for relief."). Because the Opposition refers only to hostile work environment claims and says nothing of any discrimination claims, and because the Moving Defendants' motion to dismiss specifically sought dismissal of the Plaintiffs' discrimination claims, Counts I, III and VI should be dismissed insofar as they assert claims of discrimination for Plaintiffs' failure to oppose the motion. *See Black Lives Matter*, 354 F. Supp. 3d at 328.

I.  **Hostile Work Environment – Race**

   A.  *Section 1981*

The Opposition suggests that the Moving Defendants "ignore the unique severity of the N-word." *See* Opp. Brief at page 9.[3] The Moving Defendants do no such thing. They acknowledge fully that use of that epithet is entirely inappropriate in the workplace or anywhere else in civilized society. However, they also posit that its use – while wholly vile and unacceptable – does not automatically give rise to a viable claim of a hostile work environment.

The Moving Defendants acknowledge that under certain circumstances, the use of the N-word can create a hostile work environment. *See, e.g. Rivera v. Rochester Genese Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2012). But the Opposition neglects to mention that other more recent cases have held that even repeated utterances of that word have been determined not to sustain such a claim. *See, e.g., Albert-Roberts v. GGG Constr., LLC*, 542 F. App'x 62, 64 (2d Cir. 2013) (rejecting plaintiff's argument "that the single use of the word 'n*gger' is so severe as to make out a prima facie case").

In *Moody v. Empire Hotel Dev., Inc.*, one of the plaintiffs, a Black woman, alleged that her supervisor used the N-word in her presence ten times during her three-month period of employment.

---

[3] All references herein to page numbers within the Opposition refer to the page numbers at the bottom center of the brief, **not** the court-stamped page numbers in the top right corner of each page (i.e. not the page numbers identified as "__ of 21").

2023 U.S. Dist. LEXIS 151515 at *31 (S.D.N.Y. Aug. 24, 2023). This Court held that while the supervisor's use of the N-word "demonstrates that [the supervisor] did not treat [the plaintiff] well . . . it does not rise to the level necessary to maintain her claim[s]" for race discrimination or hostile work environment. *Id.* at 32-34.

In that case, this Court reiterated that "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." *Id.* at *32, quoting *Miller v. New York State Police*, 2022 U.S. App. LEXIS 10354 at *4 (2d Cir. Apr. 18, 2022). This Court continued, "Although there can be no doubt that the use of the 'N-word' in any environment, and certainly in the work environment, is loathsome, offensive, and patently unnecessary, consideration of the cumulative evidence produced on this motion does not meet the standard to find the existence of a hostile – or for purposes of this assertion of a constructive discharge, intolerable – work environment." *Id.* at 32-33, citing *Miller*, 2022 U.S. App. LEXIS 10354 at *6-7.

Here, Drazenovich is alleged to have used the word "n*gga" (and never once its "-er" variant) in conversation with Plaintiff Graham four times and Plaintiff Hailstock twice over the course of four months. ¶¶ 57, 70, 73, 137.[4]

By comparison, in *Rivera*, the plaintiff's supervisor and co-workers directed the word "n*gger" towards him multiple times and did so in a physically threatening manner, including by a co-worker telling him he "wished all you n*ggers died" and another "call[ing] him a n*gger and shap[ing] his

---

[4] All references to Paragraph numbers (¶) herein refer to the Amended Complaint (ECF Doc. No. 19).

3

hand in the form of a gun." *Rivera*, 743 F.3d at 26.

While the use of that word, in any context or form, is never acceptable, the case law on point makes it clear that the circumstances under which it is uttered matter. Here, the allegations set forth in the Amended Complaint much more closely align with the circumstances in *Moody* than they do with those in *Rivera*.

Accordingly, the Plaintiffs' Section 1981 claims for hostile work environment should be dismissed.

B.   *NYSHRL*

The Opposition suggests that the question of whether the NYSHRL, as amended, is now coextensive with the NYCHRL has been settled. It has not. Indeed, the Opposition cites to a handful of cases where federal District Courts in New York have held that the NYSHRL and the NYCHRL are coextensive. *See* Opp. Brief at page 12. Notwithstanding the fact that those cases are not binding upon the Court in this matter,[5] numerous other decisions of this Court – many of which were also cited in the Opposition – have also held that the effect of the 2019 amendment was to render the NYSHRL "closer to" the NYCHRL, **not** coextensive with it. *See* Opp. Brief at page 12, n. 2.

Notably, Your Honor recently correctly opined that "the case law . . . has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." *Wheeler v. Praxair Surface Techs., Inc.*, 2023 U.S. Dist. LEXIS 171430 at *30 (PAE) (S.D.N.Y. Sep. 26, 2023); *see also Kurtanidze v. Mizuho Bank, Ltd.*, 2024 U.S. Dist. LEXIS 44178 at *31 (PAE) (S.D.N.Y. Mar. 13, 2024).

Even more recently than *Wheeler*, this Court reiterated that "courts must analyze NYCHRL

---

[5] *See In re Penn Cent. Commercial Paper Litig.*, 62 F.R.D. 341, 347 (S.D.N.Y. 1974) (holding that "in the same court system, as in the federal, a decision is not binding upon a court of equal rank.")

claims separately and independently from any federal and state law claims, as the NYCHRL is **designed to be more lenient toward plaintiffs** than its federal and **state** equivalents." *Shixuan Luo v. AIK Renovation Inc.*, 2023 U.S. Dist. LEXIS 209251 at *12 (S.D.N.Y. Nov. 22, 2023) (cleaned up, emphasis added).

Neither the Second Circuit nor the U.S. Supreme Court has yet weighed in on the issue. Accordingly, for the reasons set forth in their memorandum of law, the Moving Defendants urge the Court to impose an intermediate pleading standard in between federal and city law for hostile work environment claims asserted under the NYSHRL, as amended.

To reiterate, the NYSHRL now directs courts as follows:

> The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed.

N.Y. Exec. Law § 300.

The drafters of the 2019 amendment to the NYSHRL were undoubtedly aware of the existence of the NYCHRL. Had they intended to extend the law to the exceptionally plaintiff-friendly reaches of the city law, they could have. Instead, they made no mention of the NYCHRL – but they did specifically reference federal law in the newly amended statute.

Respectfully, the Moving Defendants recommend that the new, intermediate standard merely track the language of the statute as written. The NYSHRL currently requires a plaintiff to establish that he was subjected to "inferior terms, conditions or privileges of employment because of [his] membership in one or more . . . protected categories." N.Y. Exec. Law. §§ 296(1)(h), 300. A reasonable reading of this language does not require an overreaching interpretation such as that reached by the New York State Supreme Court, Appellate Division, First Department, under which a plaintiff need only show that he was treated "less well than other employees" because of his protected

5


class (with regard to the NYCHRL). *See Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009).

Instead, a plaintiff seeking protection under the NYSHRL, as amended, should be required to show that he was in fact subjected to "inferior terms, conditions or privileges of employment" due to his membership in a protected class.

Here, neither of the Plaintiffs' terms, conditions or privileges of employment were rendered "inferior" due to Drazenovich's alleged casual use of the N-word. Their compensation remained the same, they were not demoted or transferred, and they were not terminated. They were not denied any privileges granted to their colleagues. While – if the allegations are true – the language utilized by Drazenovich was entirely inappropriate, it did not subject either of the Plaintiffs to inferior terms, conditions or privileges of employment. Accordingly, the Plaintiffs' NYSHRL claims for hostile work environment should be dismissed.

    C.    *Confusion regarding causation element*

Lastly, the Moving Defendants note that it is unclear what Plaintiffs' counsel meant by the following sentences in the Opposition:

> It does not appear that Defendants challenge any other element of Plaintiffs' hostile work environment claims. However, because Defendants argue there are no allegations of discriminatory motivation when, for some reason, performing a *McDonnell-Douglas* analysis, Plaintiffs will briefly touch upon the causation element in all the time it deserves.

Opp. Brief at page 11.

Plaintiffs' counsel appears to have once again improperly conflated its clients' allegations – and the Moving Defendants' counterarguments thereto – regarding discrimination and hostile work environment. Indeed, "hostile work environment claims are not analyzed using the *McDonnell Douglas* three-part burden-shifting test." *Matthews v. Corning, Inc.*, 77 F. Supp. 3d 275, 292


(W.D.N.Y. 2014); referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Thus, the only mention of *McDonnell Douglas* in the Moving Defendants' memorandum of law was in relation to the Plaintiffs' Section 1981 discrimination claims, which are separate and distinct from the Plaintiffs' hostile work environment claims, and to which the *McDonnell Douglas* burden-shifting analysis most certainly does apply. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) (holding that *McDonnell Douglas* analysis applies to Section 1981 discrimination claims).

To be clear, to make out a prima facie discriminatory hostile work environment claim under Section 1981, a plaintiff must show that (1) the workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment" and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Phillips v. Fashion Inst. of Tech.*, 2024 U.S. App. LEXIS 5615 at *4 (2d Cir. Mar. 8, 2024).[6] The conduct complained of must be "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Contrary to Plaintiffs' counsel's assertion, the Moving Defendants most certainly do challenge all elements of the Plaintiffs' hostile work environment claim in the instant case, for the reasons described in their memorandum of law and herein.

## II.     Hostile Work Environment – Sex/Gender

Regardless of the weight afforded to the *Sanderson-Burgess* case by this Court (2016 N.Y. Misc. LEXIS 3871 [Queens Cty. Supr. Ct., Sept. 8, 2016]), the fact remains that the Amended Complaint fails to sufficiently assert that Drazenovich was motivated by a general hostility to men in

---

[6] The Second Circuit case cited by the Plaintiffs in the Opposition setting forth the Section 1981 hostile work environment standard was decided in 2007. *See Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007). The Second Circuit case cited by the Moving Defendants setting forth the current standard was decided last month. *See Phillips*, 2024 U.S. App. LEXIS 5615.

the workplace or that he treated members of both sexes differently. Indeed, if Plaintiffs' allegations are to be believed – which they must be for purposes of this motion – Drazenovich subjected both men and women to harassing behavior during his time as a Cha Cha employee. Indeed, the Amended Complaint alleges that Drazenovich "condon[ed] and encourag[ed] male employees to act inappropriately against female employees," and that he participated in sexual harassment of female employees and customers, causing one employee to resign from her employment. ¶¶ 67-68, 154-156, 158-165, 168-169, 172.

While it is technically true that Drazenovich is not alleged to have personally physically assaulted any female employees, the Amended Complaint claims that he "encouraged" another employee to "continue" the humiliating conduct of "whipp[ing] a female employee with a wet rag while taking out his camera to record the event." ¶¶ 67-68, 154-155.

Accordingly, it cannot be correctly said that "what Drazenovich verbally communicated to or about female employees and customers does not impact the analysis" (Opp. Brief at p. 15) here, as he very clearly – allegedly – engaged in similar behavior directed towards Cha Cha employees of both sexes.

Thus, Plaintiff Graham's gender-based hostile work environment claims under the NYSHRL and NYCHRL must fail, as Amended Complaint alleges that he subjected both male and female employees to similar forms of abuse. *See Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80-81 (1998) (holding that in the case of a same-sex harassment plaintiff, how the alleged harasser treated members of both sexes comparatively is relevant to determining viability of gender discrimination claim).

### III.  Constructive Discharge

Because the Plaintiffs cannot establish claims for hostile work environment under Section 1981

or the NYSHRL, so too must their accompanying allegations of constructive discharge fail. *See Black v. Buffalo Meat Serv. Inc.*, 2022 U.S. App. LEXIS 20269, at *5 (2d Cir. July 22, 2022) (holding that the standard for a constructive discharge claim is higher than the standard for establishing a hostile work environment.).

## **CONCLUSION**

For the reasons set forth in their memorandum of law and herein, the Moving Defendants' partial motion to dismiss should be granted.

Dated: April 29, 2024                                              Respectfully submitted,

                                               */s/ Christopher M. Helsel*
                                               Christopher M. Helsel
                                               O'HAGAN MEYER PLLC
                                               2560 Huntington Avenue, Suite 204
                                               Alexandria, Virginia 22303
                                               T: (703) 775-8609
                                               E: chelsel@ohaganmeyer.com

                                               Tamara S. Grimm
                                               O'HAGAN MEYER PLLC
                                               1717 Arch Street, Suite 3910
                                               Philadelphia, PA 19103
                                               T: (215) 461-3306
                                               E: tgrimm@ohaganmeyer.com

                                               *Counsel for Defendants Cha Cha Beverages LLC*
                                               *i/s/h/a Cha Cha Matcha, Inc. and Jay Gujjar*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the within Reply Brief in Further Support of Partial Motion to Dismiss Notice of Appearance was served on all counsel of record via the Court's ECF system, this 29th day of April, 2024.

Respectfully Submitted,

**O'HAGAN MEYER, PLLC**

By: _/s/ Christopher M. Helsel_____
Christopher M. Helsel
O'HAGAN MEYER PLLC
2560 Huntington Avenue, Suite 204
Alexandria, Virginia 22303
T: (703) 775-8609
E: chelsel@ohaganmeyer.com

*Attorney for Defendants,*
*Cha Cha Matcha, Inc and Jay Gujjar*